## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

*ELECTRONICALLY FILED*

| | | |
|---|---|---|
| **BARBARA WILSON** | ) | |
| | ) | |
| | ) | **Civil Action No. 3:19-cv-229-DJH** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **PINNACLE FOODS INC., et al.** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF
### MOTION TO EXCLUDE DR. TIMOTHY C. CUMBO

Defendants, Pinnacle Foods, Inc., Peak Finance Holdings, LLC, Pinnacle Foods Group, LLC, Pinnacle Foods Finance, LLC and The Kroger Co. ("Kroger") (collectively "Defendants"), by counsel, submit this memorandum in support of their motion to exclude the proposed expert testimony of Plaintiff Barbara Wilson's ("Wilson") expert, Dr. Timothy C. Cumbo ("Dr. Cumbo").

### INTRODUCTION

Given the extremely short amount of time[1] dedicated to his expert report,[2] it is unsurprising that Dr. Cumbo did not utilize valid methodology to reach the conclusions

---

[1] In just four to six hours, Dr. Cumbo was somehow able to examine all of Wilson's medical records, review her deposition transcript, and issue a report concluding that listeria was the cause of her hospitalization in April 2017. *See* deposition transcript of Dr. Cumbo ("Dr. Cumbo Deposition"), p. 85. Relevant pages of this transcript are attached as Exhibit 1.

[2] Dr. Cumbo's expert report ("Dr. Cumbo Report") is attached as Exhibit 2.

expressed therein. Indeed, Dr. Cumbo admittedly did not conduct any research, undertake an independent study, or review a single piece of literature in rendering his report. Instead, Dr. Cumbo's opinions are founded entirely upon his vague and undefined "experience," which has little to nothing to do with listeria. Courts in this circuit and others have made clear that this type of *ipse dixit* testimony is improper and should be excluded.

Further, Dr. Cumbo's own testimony demonstrates that his effort to undertake a differential diagnosis is incomplete and, therefore, unreliable. By his own admission, Dr. Cumbo did not use a valid methodology to rule in all potential causes of Wilson's illness, nor did he engage in standard diagnostic techniques to rule out alternative causes as required to pass the Sixth Circuit's test for reliability. Dr. Cumbo instead relied upon false assumptions and speculation to conduct what can only be described as a piecemeal and incomplete differential diagnosis. For these reasons and others, the Court should disqualify Dr. Cumbo as an expert in this case.

### BACKGROUND AND SUMMARY OF OPINIONS[3]

Defendant Pinnacle Foods, Inc. ("Pinnacle") is the former manufacturer of Hungry Man Selects Frozen Chicken & Waffles (the "Product").[4] On April 3, 2017, the U.S. Food and Drug Administration ("FDA") conducted a routine inspection of Pinnacle's Jackson, TN plant where the waffles for the Product were produced.[5] As is customary in the industry, Pinnacle withheld from distribution all finished product that was in the plant or that was in process at the time the FDA began taking test swabs; that product was never released into commerce. As a result of

---

[3] A comprehensive statement of material facts is provided is Defendants' motion for summary judgment.

[4] A copy of the recall notice is attached as Exhibit 3.

[5] *See id.*

these tests, Pinnacle voluntarily recalled the Product on May 5, 2017.[6]  At the time of the recall, there had not been any reported illnesses associated with the Product; instead, the recall was issued as a precautionary measure.[7]  To date, there have been no confirmed illnesses associated with the recall.

Approximately four months before the voluntary recall, Wilson purchased the Product at a Kroger store in Louisville, Kentucky.[8]  Wilson later consumed the Product in February 2017 after cooking it according to the package instructions.[9]  Notably, Wilson underwent a total colectomy in 2013 secondary to colon cancer and has had chronic loose bowel movements and diarrhea since that time.[10]  In March of 2017, Wilson developed worsening of her chronic diarrhea and was given Imodium by her oncologist.[11]  Wilson temporarily improved on Imodium, but on April 25, 2017, her symptoms worsened and she was hospitalized due to nausea, vomiting and diarrhea.[12]  Wilson was subsequently diagnosed with enteritis,[13] but there was no specific finding of Listeriosis[14] or any other infection.[15]  Wilson did not retain the Product and, therefore, it has never been tested.[16]

Because Wilson's stool cultures were not positive for L. *mono*, there was no clinical or laboratory diagnosis, and the Product was never tested or confirmed to have been contaminated,

---

[6] *Id.*

[7] *Id.*

[8] Deposition transcript of Wilson ("Wilson Deposition"), p. 20. Relevant portions of this transcript are attached as Exhibit 4.

[9] *Id.*, p. 13.

[10] Dr. Cumbo Deposition, p. 68.

[11] *Id.*

[12] *Id.*

[13] Enteritis is inflammation of the intestines.

[14] Listeriosis is an infection that can occur when a person eats food that has been contaminated with Listeria *monocytogenes* ("L. *mono*").

[15] Wilson Deposition, pp. 29-31.

[16] *Id.*, p. 10.

Dr. Cumbo has attempted to establish the presence of listeria through a differential diagnosis. As explained in greater detail below, Dr. Cumbo's diagnosis is incomplete and a product of speculation, inaccurate facts, and general medical experience with no specific foundation in Listeriosis:

1. Opinion 1: Wilson consumed a product known to be contaminated with Listeria.[17]

   Unreliability: Dr. Cumbo later acknowledged that this statement is inaccurate and that, at the time of his report, he had not reviewed the recall notice. Dr. Cumbo, therefore, was unaware that the recall was voluntary and that the Product had not even been tested.[18]

2. Opinion 2: Wilson developed enteritis symptoms within the appropriate timeframe for the known incubation period of listeria.[19]

   Unreliability: Defendants' expert has explained why the timeframe is wholly inconsistent with Listeriosis. Regardless, this statement is unsupported by any scientific evidence. Instead, Dr. Cumbo reached this conclusion based only on a "[b]asic understanding of infectious diseases."[20]

3. Opinion 3: Wilson had a workup that showed severe infection and was negative for more common causes of bacterial enteritis (knowing that listeria does not grow well in culture). "Listeria could easily be the culprit, especially since we know she was exposed."[21]

   Unreliability: Setting aside the scientific inaccuracies of this opinion, Dr. Cumbo conceded there could have been numerous other potential causes of Wilson's illness other than listeria, but he elected to focus only on a few potential common bacterial causes.[22] Moreover, Dr. Cumbo's entire opinion is based on the assumption that Wilson was exposed, which is unsupported by the record.[23]

4. Opinions 4-5: Wilson improved slightly on an antibiotic that has moderate activity against listeria and improved after receiving a different antibiotic that treats listeria well.[24]

---

[17] Dr. Cumbo Report, p. 13.
[18] Dr. Cumbo Deposition, pp. 16-19.
[19] Dr. Cumbo Report, p. 13.
[20] Dr. Cumbo Deposition, p. 22.
[21] Dr. Cumbo Report, p. 13.
[22] Dr. Cumbo Deposition, pp. 28-31.
[23] *Id*., pp. 18-19; 33-34.
[24] Dr. Cumbo Report, p. 13.

Unreliability: Again, notwithstanding the fact that this opinion is scientifically unsupportable, it is based solely on vague references to Dr. Cumbo's "experience" rather than reliable sources or data.[25]

### ARGUMENT

Expert testimony must meet certain requirements in order to be admissible. *See*, *e.g.*, *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); Fed. R. Evid. 702. Trial judges are the "gatekeepers" with regard to such evidence, allowing only reliable expert testimony to reach the jury and excluding that which is dubious. *Saint Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, 666 F. Supp. 2d 820, 830 (N.D. Ohio 2009) (citing *Daubert*, 509 U.S. at 589). The party seeking the admission of expert testimony bears the burden of proving the testimony meets the *Daubert* requirements by a preponderance of the evidence. *Asad v. Cont'l Airlines, Inc.*, 314 F. Supp. 2d 726, 731 (N.D. Ohio 2004) (citing *Pride v. BIC Corporation*, 218 F.3d 566, 578 (6th Cir. 2000)).

In *In re Scrap Metal Antitrust Litigation*, the Sixth Circuit explained that a proposed expert's opinion is admissible under Fed. R. Evid. 702, at the discretion of the trial court, if the opinion satisfies three requirements: (1) the witness is qualified; (2) the testimony is relevant, meaning that it "will assist the trier of fact"; (3) and the testimony is reliable. 527 F.3d 517, 529 (6th Cir. 2008) (citations omitted; internal quotation marks omitted). "The [trial court's] fundamental objective when considering the admissibility of expert testimony is 'to ensure the reliability and relevancy of that testimony.'" *Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (quoting *Kumho*, 526 U.S. at 152).

Under these standards, Wilson cannot meet her burden for the admission of Dr. Cumbo's proposed testimony. The problem with Dr. Cumbo's opinions is not merely that they are

---

[25] Dr. Cumbo Deposition, p. 46.

scientifically unsupported and grounded in false assumptions, or that he is not sufficiently qualified to offer opinions regarding Listeriosis. While each of those flaws would be independently sufficient to exclude his opinions, the larger issue is that Dr. Cumbo's methodology is incomplete, as he conducted a partial differential diagnosis that did not properly account for other potential causes. Thus, the challenge for Wilson is not merely that Dr. Cumbo's opinions are wrong, but that the methodology he used to arrive at his conclusions is improper and unreliable. The Court should exclude Dr. Cumbo in exercising its gatekeeping function.

## I.  DR. CUMBO'S SOLE RELIANCE UPON HIS UNDEFINED "EXPERIENCE" MAKES HIM UNQUALIFIED AND RENDERS HIS OPINIONS UNRELIABLE.

In examining the reliability prong, "Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (citing Fed. R. Evid. 702). The Supreme Court has offered a number of factors that courts may consider to determine whether expert testimony is reliable: (1) whether the theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error and the existence of standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance in a relevant community. *See Daubert*, 509 U.S. at 593–94. These factors are not a definitive checklist or test, but require a "flexible" inquiry that focuses "solely on principles and methodology, not on conclusions that they generate." *Id*. at 593–95. Defendants are hard-pressed to find a better example of a case in which an expert's testimony is unreliable.

6

In his report, Dr. Cumbo does not cite any literature, studies, testing, or a single piece of authority for his conclusions.[26] Instead, Dr. Cumbo's opinions, which were generated in approximately four to six hours, are founded entirely upon his experience and what he vaguely describes as common knowledge:

> Q. And is that just from general experience?
>
> A. Yes.
>
> Q. Is there any literature in deriving at this opinion that you used, or is that just from experience?
>
> A. It's just from experience.[27]
>
> ***
> Q. Same question earlier: Is this just based on past experience, or is there any literature as well?
>
> A. This is pretty common knowledge in infectious disease.[28]
>
> ***
> Q.  What either medical experience or literature supports that opinion?
>
> A. That is just a general understanding of infectious disease and how bacteria work . . . [29]
>
> ***
> Q. So then just from a broad standpoint then, [when you say] she developed signs and symptoms of severe enteritis within an appropriate timeframe for the known incubation period of listeria. Could you just now generally walk me through how you reached that conclusion?
>
> A. A general understanding about infectious diseases.[30]

---

[26] *See* Dr. Cumbo Report.

[27] Dr. Cumbo Deposition, p. 46 (addressing his opinion that Levofloxacin would have only briefly taken care of Wilson's symptoms).

[28] *Id*., p. 60 (addressing his opinion that Augmentin would have eliminated Wilson's symptoms).

[29] *Id*., p. 21 (addressing his contention that some strands of listeria that are completely innocuous to one person could kill another person - an opinion not in his report).

[30] *Id*., pp. 23-24.

The Sixth Circuit has uniformly rejected the type of conclusory opinions Dr. Cumbo offers in this case. For example, in *Thomas v. City of Chattanooga*, the Sixth Circuit rejected an expert's opinions regarding police procedures in a civil rights case, even though the proposed expert had a "long career in the fields of criminal justice, the law, and education [that] have all related to police training and operations." 398 F.3d 426, 432 (6th Cir. 2005). In doing so, the Sixth Circuit concluded that "being an expert does not lessen the burden … In fact '*[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached ... and how that experience is reliably applied to the facts*. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id*. (quoting Fed. R. Evid. 702, Advisory Committee's Note) (emphasis added); *see also General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing . . . requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Thomas v. Novartis Pharm. Corp*., 443 F. App'x 58, 61 (6th Cir. 2011) (although the expert was an experienced oral surgeon with many years of practice and training, had treated other patients with osteonecrosis of the jaw, and had read literature and attended conferences on osteonecrosis of the jaw, the plaintiff had failed to make the connection between the expert's experience and his ability to meets the requirements to give an expert opinion regarding the cause of osteonecrosis of the jaw).

Dr. Cumbo's exclusive reliance on his general experience and knowledge is insufficient to pass muster under *Daubert* and its progeny. Indeed, he has not even attempted to explain how his experience leads to the conclusions he has reached or how that experience was reliably applied to the facts. For example, when asked whether he had any experience or training

8

specifically dealing with listeria, Dr. Cumbo testified that he had "run into some cases of listeria and it's part of general infectious diseases training," but he could not recall any particular cases.[31]  Dr. Cumbo also stated that he had treated listeria before, but again could not provide any specifics or details.[32]  In fact, Dr. Cumbo acknowledged that none of his prior research or publications have involved listeria and that he has never provided expert testimony in a case dealing with listeria.[33]  In essence, the extent of Dr. Cumbo's experience – upon which he relies entirely for his opinions – is a few cases of listeria he cannot recall and his general infectious disease training many years ago.  Wilson has failed to make the connection between Dr. Cumbo's limited experience with listeria and his ability to provide a reliable expert opinion regarding the cause of Wilson's hospitalizations, as required by controlling law.  As a result, Dr. Cumbo should be disqualified.

## II.    DR. CUMBO'S DIFFERENTIAL DIAGNOSIS IS INCOMPLETE AND UNRELIABLE.

Because Wilson's stool cultures were not positive for L. *mono*, there was no clinical or laboratory diagnosis, and no testing on the Product was conducted, Dr. Cumbo has attempted to establish the presence of listeria through a differential diagnosis, in which "a physician considers all relevant potential causes of the symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history." *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001) (quoting Federal Judicial Center, Reference Manual on Scientific Evidence 214 (1994)).  Although this Circuit recognizes that a differential diagnosis is an appropriate method for determining specific causation, simply "calling something a 'differential diagnosis' or 'differential etiology' does not by itself answer the reliability

---

[31] *Id*., pp. 7-12.
[32] *Id*.
[33] *Id*.

question." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010). Wilson, therefore, bears the burden of establishing three threshold elements of reliability: Dr. Cumbo (1) objectively ascertained, to the extent possible, the nature of Wilson's injury; (2) ruled in one or more causes of the injury using a valid methodology; and (3) then engaged in standard diagnostic techniques to rule out alternative causes. *Id.*

Dr. Cumbo's differential diagnosis fails the last two prongs of the Sixth Circuit's test for reliability. As set forth below, Dr. Cumbo has in essence: (1) ruled in only common bacterial infections; (2) ruled out those common infections based on testing conducted by Wilson's treating physician; and (3) then determined listeria was present since it does not typically appear in stool cultures, while acknowledging that there are other causes that likewise would not have appeared. Because Dr. Cumbo's differential diagnosis is speculative and incomplete, the Court should strike his report and exclude him as an expert.

### A.    DR. CUMBO DID NOT RELIABLY RULE IN ALTERNATIVE CAUSES.

In his deposition, Dr. Cumbo acknowledged that Wilson's age and medical history make her "more susceptible in general to a lot of different infections"[34] and that there could have been numerous potential causes of Wilson's illness, such as bacterial infections, viruses, a blood clot, or an autoimmune disease.[35] Dr. Cumbo did not, however, consider these alternative causes in conducting his analysis. In fact, Dr. Cumbo could not even recall whether Wilson's treating physicians had tested her for viral infections.[36] Instead of analyzing all potential causes using valid methodology, Dr. Cumbo selectively focused only on "standard bacterial infections" that would typically test positive in a stool culture, his logic being that: (1) Wilson did not test positive for any of these common bacteria; (2) listeria does not grow well in culture and,

---

[34] *Id.*, p. 69.
[35] *Id.*, pp. 28-30.
[36] *Id.*, p. 31.

10

therefore, could produce a false negative; so (3) Wilson must have had Listeriosis.[37]   Setting

aside the speculative jumps and scientific inaccuracies underlying his reasoning, Dr. Cumbo

conceded he did not rule in other potential causes of Wilson's illness, including those that would

also produce a false negative:

> Q. So is there -- are there any other organisms that this stool culture, other than listeria, may not be easy to grow or show up?
>
> A. I'm sure there are. There are a lot of organisms that don't grow in standard culture. But as far as more common ones that cause inflammation, they're very good at selected media. So does the organisms that I mentioned, the salmonella, shigella, campylobacter, et cetera.[38]
>
> \*\*\*
>
> Q. So are there other forms or organisms that could have generated a false negative result?
>
> A. Parasitic infections could be another form or organism. I'd say viruses and parasitic infections.
>
> Q. Any other kind of bacterial organisms?
>
> A. **That would be causing this and cause a false negative result? Any of them. They can be -- so the problem with stool cultures is you're trying to find a true needle in a haystack. . .**[39]

Dr. Cumbo's own testimony makes clear that his report and analysis can only be

described as guesswork.  Indeed, Dr. Cumbo's report is devoid of any analysis or discussion of

the numerous other potential causes other than "standard organisms."[40]   Because Dr. Cumbo

failed to conduct the threshold step of ruling in all potential other causes of Wilson's illness, his

differential diagnosis is unreliable.

---

[37] Dr. Cumbo Deposition, p. 29; Dr. Cumbo Report, p. 13.
[38] Dr. Cumbo Deposition, p. 30.
[39] *Id*., p. 32 (emphasis added).
[40] *See* Dr. Cumbo Report, p. 13.

### B.   DR. CUMBO DID NOT RELIABLY RULE OUT POTENTIAL CAUSES.

Even assuming Dr. Cumbo had ruled in other causes of Wilson's illness using a valid methodology, he has failed to rule those causes out, let alone engage in standard diagnostic techniques to do so.  Dr. Cumbo has confirmed as much:

> Q. So under that diagnosis and methodology, you kind of looked at the records and ruled out other certain potential causes? Is that accurate?
>
> A. **I wouldn't say ruled out. I would say less likely**. You know, because we didn't have any positive results. Obviously, there was something going on causing a lot of inflammation. **But we don't have any idea of what was causing -- what was doing that because we didn't have any positive culture results**.
>
> Q. I kind of want to start broad and then narrow it down. When you say 'less likely,' does that mean that there could of have been other potential causes?
>
> A. Sure.[41]
>
> ***
>
> Q. The term [listeria] could easily be the culprit – I guess we talked about this differential diagnosis -- what does 'could easily,' mean? Does that mean there are others [causes] that could be as well?
>
> A. It's possible.[42]

Dr. Cumbo's testimony speaks for itself - he did not rule out other potential causes of Wilson's illnesses as required under controlling Sixth Circuit law.  Accordingly, the Court should exclude Dr. Cumbo's testimony.  *See Tamraz*, 620 F.3d at 674; *McCarty v. Arch Wood Prot., Inc.*, 2016 WL 2936435, at *18 (E.D. Ky. Feb. 26, 2016) (expert's differential diagnosis was excluded after testifying that "it's not that I've ruled out a lot of [other causes]").

---

[41] Dr. Cumbo Deposition, pp. 28-29.
[42] *Id.*, p. 34.

12

## C.    DR. CUMBO'S DIFFERENTIAL DIAGNOSIS IS SPECULATIVE.

Even if Dr. Cumbo had sufficiently ruled in other causes of Wilson's illness and then ruled those alternative causes out (which he did not), Wilson has nonetheless failed to show that Dr. Cumbo used sound and reliable methodology in doing so. *Tamraz*, 620 F.3d at 670. In *Tamraz*, the Sixth Circuit Court of Appeals reversed a jury verdict after finding that the trial court erred in admitting expert testimony on causation by Dr. Carlini, who testified that the plaintiff's Parkinson's disease was caused by exposure to manganese in the fumes of welding supplies manufactured by defendants. In excluding his testimony, the Court criticized the speculative nature of Dr. Carlini's reasoning and underlying support, much of which parallels that of Dr. Cumbo:

| Dr. Carlini | Dr. Cumbo |
|---|---|
| **Support:** Dr. Carlini diagnosed the plaintiff with "manganese-induced parkinsonism" because "that seemed the most likely explanation for his early onset parkinsonism," based on his "clinical examination," "Mr. Tamraz's history" "[a]nd just general experience and knowledge about movement disorders." | **Support:** Dr. Cumbo diagnosed Wilson because it seemed to make the "most sense" based on review of her medical records and general understanding of infectious diseases and bacteria.[43] |
| Reasoning (1): Tamraz was exposed to welding fumes **presumably** containing manganese. | Reasoning (1): Wilson was exposed to a Product that **potentially** contained listeria.[44] |
| Reasoning (2): Tamraz developed the symptoms of Parkinson's Disease (though not those of manganism). | Reasoning (2): Wilson developed signs and symptoms of enteritis within an appropriate timeframe for the known incubation period of listeria (reaching this conclusion under the false assumption that the Product was contaminated).[45] |

---

[43] *See id.*, pp. 21; 46; 60; 80-81
[44] *Id.*, pp. 18-19; 33-34.
[45] *See* Dr. Cumbo Report, p. 13.

| Reasoning (3)-(7): Scientists have identified genetic factors that cause some forms of otherwise "idiopathic" Parkinson's Disease, some literature has hypothesized that toxins combined with genetics may cause other cases of Parkinson's Disease, manganese is known to cause manganism, so it would be a possible candidate for triggering Parkinson's Disease as well, Tamraz may have the genes for Parkinson's Disease, and manganese may have triggered these genes and given Tamraz parkinsonism. | Reasoning (3)-(5): Wilson showed symptoms consistent with Listeriosis (and other illnesses), improved slightly on an antibiotic that has moderate activity against listeria and improved after receiving a different antibiotic that treats listeria well.  Thus, listeria could have been the culprit since we know she was exposed.[46] This opinion is based on false information, and unlike Dr. Carlini, Dr. Cumbo did not even review any literature or studies in reaching his conclusions. |
|---|---|

In excluding Dr. Carlini's testimony, the court determined that his reasoning was better described as a "plausible hypothesis" that "may even be right," but it was still "no more than a hypothesis, and it thus is not knowledge," nor is it "based upon sufficient facts or data" or the "product of reliable principles and methods ... applied ... reliably to the facts of the case." *Tamraz*, 620 F.3d at 670.  This Court should reach the same conclusion with respect to Dr. Cumbo.

Just as Dr. Carlini, Dr. Cumbo's analysis is better characterized as a "working hypothesis" founded upon speculation rather than an expert opinion backed by scientific data and support.  Indeed, when asked to identify the basis for his opinion that the Product was "known to be contaminated," Dr. Cumbo testified that he relied on the recall.[47] Dr. Cumbo, however, acknowledged that he had not even reviewed the recall notice before his deposition and that, when he issued his report, he was unaware that the recall was voluntary and that the Product was never tested.[48] Dr. Cumbo, therefore, had no choice but to admit that his report would be more

---

[46] *See id.*

[47] Dr. Cumbo Deposition, p. 18.

[48] *Id.*

14

accurate if it stated that Wilson was "potentially exposed" to listeria.[49]  In other words, the fundamental first step in Dr. Cumbo's analysis (and the foundation for his other conclusions) is an inaccurate statement based on incomplete and false information.

Similarly, the second step in Dr. Cumbo's analysis (that Wilson developed symptoms within the incubation period of listeria) is not based on facts or data, but rather, "[b]asic understanding of infectious diseases."[50]  In fact, Dr. Cumbo could not even describe what the incubation period is with specificity, instead speculating that it "depends" and "can be a few days" or "several weeks."[51]  In short, the majority of Dr. Cumbo's diagnosis turns on speculation and general "experience" unrelated to listeria, not valid methodology.  Making matters worse for Wilson, Dr. Cumbo has also acknowledged that portions of the hospital records are *inconsistent* with Listeriosis:

> Q. Would that be kind of consistent with listeria symptoms, throwing up and then you feel better, or would it be ongoing?
>
> A. It would be more ongoing. But it can be episodic. There's just no way to know for sure.
>
> Q. But potentially if you're vomiting and the abdominal pain improves, that's not consistent with listeria?
>
> A. No.
>
> Q. And, also, the improvement on imodium?
>
> A. I don't have a good answer for either because I don't know. I don't know. Anything that's going to stop the diarrhea can make you feel better for a little while.[52]

---

[49] *Id.*, pp. 18-19; 33-34.

[50] *Id.*, p. 22.

[51] *Id.*

[52] *Id.*, p. 71 (discussing the improvement of Wilson's diarrhea on Imodium and of her abdominal pain after vomiting).

It is abundantly clear that, in an effort to fill in some of the holes in his report, Dr. Cumbo leapt to various conclusions under the assumption that Wilson ate a contaminated product and exhibited signs consistent with listeria. *See Rolen v. Hansen Beverage Co*., 193 F. App'x 468, 473 (6th Cir. 2006) ("Expert opinions based upon nothing more than the logical fallacy of *post hoc ergo propter hoc* typically do not pass muster under *Daubert*.")  Indeed, Dr. Cumbo has opined in his report and testified during his deposition that "listeria could have been the culprit since we know she was exposed."[53]  The assumption that the Product was contaminated, however, is unsupported by any facts and is based on a voluntary recall notice that Dr. Cumbo admittedly did not review.  *Daubert*, 509 U.S. at 590 ("the word 'knowledge' connotes more than subjective belief or unsupported speculation.").  Further, the conclusion that Wilson's timeline and symptoms are consistent with listeria is contradicted by Dr. Cumbo's testimony and not backed by any scientific data, testing or literature.  *Conde v. Velsicol Chemical Corp*., 24 F.3d 809 (6th Cir.1994) (holding that the experts' testimony in support of differential diagnosis that chlordane  exposure "is consistent with" the plaintiffs' observed symptoms left too wide an analytical gap to permit an inference to be drawn on the ultimate issue of medical causation). If these fundamental premises for the report are unsupportable, then the differential diagnosis cannot be considered reliable by any stretch of the imagination.

## III.    EVEN IF DR. CUMBO IS NOT DISQUALIFIED, PORTIONS OF HIS TESTIMONY SHOULD BE EXCLUDED.

Even assuming Dr. Cumbo is permitted to present his speculative testimony, Dr. Cumbo should be precluded from testifying as to particular subject matters.  Unlike other products that were part of Pinnacle's recall, the Product was not ready-to-eat (intended for direct human consumption without the need for cooking or other processing to eliminate or reduce to an

---

[53] Dr. Cumbo Report, p. 13; Dr. Cumbo Deposition, pp. 26-27.

acceptable level the micro-organisms of concern).   Instead, the Product was required to be cooked as directed on its packaging instructions, which would have resulted in an end-temperature of 165º F before consumption.[54]   This is a critical point, as Wilson has confirmed that she cooked the Product according to the packaging instructions.[55]

According to Defendants' expert, Dr. Lee Harrison, L. *mono* is killed at a temperature of 165º F and, therefore, hot-cooked foods are not a transmission source of listeria.[56]   In other words, even if the Product was contaminated in the first place (and there is no evidence that it was), Wilson's testimony establishes that any listeria would have been killed in the cooking process.   Despite testifying that 165º F "should kill most things," Dr. Cumbo attempted to backtrack by stating that listeria could have potentially survived if the Product was "teeming" with contamination.[57]   Defendants will be able to establish that the latter part of this opinion is not scientifically supportable and that *all* alleged listeria, regardless of the quantity, would have been killed if properly cooked.   Nevertheless, Dr. Cumbo should be precluded from presenting any such testimony.

Despite claiming to have read Wilson's deposition transcript, wherein she admitted that she cooked the Product according to its instructions, Dr. Cumbo was unaware that the Product was not ready-to-eat and he did not conduct any research or an independent study of what the temperature would have been when Wilson consumed it.[58]   It is, therefore, unsurprising that Dr. Cumbo's report does not contain any analysis or mention of whether the alleged listeria could have possibly survived the cooking process.   For this reason alone, Dr. Cumbo should be

---

[54] A copy of the Product's heating validation is attached as Exhibit 5.
[55] Wilson Deposition, p. 13.
[56] A copy of Dr. Harrison's report is attached as Exhibit 6.
[57] Dr. Cumbo Deposition., pp. 80-83.
[58] *Id*., pp. 78-79.

17

precluded from testifying that listeria could have endured if the Product was "teeming" with contamination. *See* Rule 26(a)(2)(B) (requiring "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them"); *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (an expert's "report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources."); *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, Inc., 467 F.3d 1355, 1368 (Fed. Cir. 2006) (affirming district court's exclusion of expert opinions not disclosed in their initial reports); *Northlake Mktg. & Supply, Inc. v. Glaverbel*, 1996 WL 732828, at *2 (N.D. Ill. Dec. 17, 1996) ("It is inappropriate for an expert to try to beef up his or her opinion with second thoughts after he or she has already been deposed in connection with the detailed report of his or her opinions as required by [Rule 26(a)(2)]").

Even if Dr. Cumbo had addressed the issue in his report or attempted to supplement it, the Court need look no further than Dr. Cumbo's testimony to determine that his opinion (given for the first time at his deposition) is not reliable:

> A. . . . And I just -- if there was a heavy inoculum of listeria in the sample that she ate, this may not be enough. **I'm just speculating right now, to be perfectly fair.**
>
> It still makes the most sense to me that this was a listeria infection because where this came from -- **this is kind of assuming** -- let me back up for a minute. If it's teeming with listeria, this may not be enough. **I don't know. I don't know.**[59]

Dr. Cumbo's testimony is, by his own admission, speculative and should not be permitted. *Daubert*, 509 U.S. at 590 ("the word 'knowledge' connotes more than subjective belief or

---

[59] *Id*., pp. 80-81 (emphasis added).

18

unsupported speculation."); *Tamraz*, 620 F.3d at 671 (quoting *Rosen v. Ciba–Geigy Corp*., 78 F.3d 316, 319 (7th Cir.1996) ("Dr. Carlini may be a 'distinguished' doctor, and 'his conjecture' about causation may be 'worthy of careful attention.... But the courtroom is not the place for scientific guesswork, even of the inspired sort.'"); *see also Goebel v. Denver & Rio Grande W. R.R. Co*., 215 F.3d 1083, 1088 (10th Cir. 2000). ("[N]o matter how good" experts' "credentials" may be, they are "not permitted to speculate."). For this additional reason, the Court should preclude Dr. Cumbo from testifying that 165º F would not have been sufficient to kill the alleged listeria.

## CONCLUSION

For the foregoing reasons, the Court should exclude the proposed expert testimony of Dr. Cumbo.

Respectfully submitted,

*/s/ Logan J. Mayfield*
Brian M. Johnson
Logan J. Mayfield
DICKINSON WRIGHT PLLC
300 West Vine Street, Suite 1700
Lexington, Kentucky  40507
Phone:  (859) 899-8730
Fax:  (844) 670-6009
bjohnson@dickinsonwright.com
lmayfield@dickinsonwright.com
COUNSEL FOR DEFENDANTS

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic notice to all counsel of record.

/s/ Logan J. Mayfield
COUNSEL FOR DEFENDANTS

4818-5570-0402 v7 [63445-2]