**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

*ELECTRONICALLY FILED*

| | |
|---|---|
| **BARBARA WILSON** ) | |
| ) | |
| ) | **Civil Action No. 3:19-cv-229-DJH** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| ) | |
| **PINNACLE FOODS INC., et al.** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| _____ ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendants, Pinnacle Foods, Inc., Peak Finance Holdings, LLC, Pinnacle Foods Group,

LLC, Pinnacle Foods Finance, LLC (collectively, the "Pinnacle Defendants") and The Kroger Co.

("Kroger") (collectively "Defendants"), by counsel, submit this memorandum in support of their

motion for summary judgment against Plaintiff Barbara Wilson ("Wilson").

**INTRODUCTION**

This is an alleged food-poisoning case in which Wilson has asserted claims against

Defendants stemming from two separate hospitalizations in April and May of 2017.  The basis of

Wilson's Complaint is that she consumed a product she alleges was contaminated with listeria and

became ill.  Discovery, however, has shown that Wilson has no evidence to support her assertions.

Instead, Wilson hopes to prove her claims based solely on: (1) a speculative and incomplete expert

report that should be excluded by the Court; (2) the fact that the product at issue was voluntarily

1

recalled; and (3) that she became sick nearly three months after consuming that product. This evidence is insufficient for Wilson to overcome summary judgment.

## UNDISPUTED MATERIAL FACTS

### I.   WILSON BECOMES SICK

Defendant Pinnacle Foods, Inc. ("Pinnacle") is the former manufacturer of Hungry Man Selects Frozen Chicken & Waffles (the "Product").[1]   On January 12, 2017, Wilson purchased the Product at a Kroger store in Louisville, Kentucky.[2] According to Wilson, she consumed the Product in February 2017 after cooking it according to the package instructions.[3]   Wilson had previously undergone a total colectomy in 2013 secondary to colon cancer and has had chronic loose bowel movements and diarrhea since that time.[4]   In March of 2017, Wilson developed worsening of her chronic diarrhea and was given Imodium by her oncologist.[5]   Wilson's diarrhea improved on Imodium, but on April 25, 2017, her symptoms worsened and she was hospitalized due to nausea, vomiting and diarrhea.[6]   Wilson was subsequently diagnosed with enteritis, but there was no specific finding of Listeriosis[7] or any other infection.[8]

### II.   PINNACLE'S VOLUNTARY RECALL

On April 3, 2017, the U.S. Food and Drug Administration ("FDA") conducted a routine inspection of Pinnacle's Jackson, TN plant where the waffles from the Product were produced.[9]

---

[1] *See* recall notice, attached as Exhibit 1.

[2] Deposition transcript of Wilson ("Wilson Deposition"), p. 20.  Relevant portions of this transcript are attached as Exhibit 2.

[3] *Id.*, p. 13.

[4] Deposition transcript of Dr. Cumbo ("Dr. Cumbo Deposition"), p. 68. Relevant portions of the transcript are attached as Exhibit 3.

[5] *Id.*

[6] *Id.*

[7] Listeriosis is an infection that can occur when a person eats food that has been contaminated with Listeria *monocytogenes* ("L. *mono*").

[8] Wilson Deposition, pp. 29-31.

[9] *See* recall notice.

As is customary in the industry, Pinnacle withheld from distribution all finished product that was in the plant or that was in process at the time the FDA began taking test swabs; that product was never released into commerce. As a result of these tests, Pinnacle voluntarily recalled the Product on May 5, 2017.[10]  At the time of the recall, there had not been any reported illnesses associated with the Product; instead, the recall was issued as a precautionary measure.[11]  To date, there have been no confirmed illnesses associated with the recall.

### III.    WILSON IS HOSPITALIZED AGAIN

According to the Complaint, Wilson received an automated phone call from Kroger on May 7, 2017, notifying her that the Product had been recalled.[12]  Wilson was also allegedly notified of the recall on a Kroger receipt dated May 11, 2017.[13]  At a routine checkup with her gastroenterologist the next day, Wilson informed her doctor about the automated call, but her doctor did not seem concerned that she currently had Listeriosis, did not conduct any testing, and did not prescribe any medications.[14]  On May 16, 2017, Wilson was readmitted to the hospital and had surgery to repair a ruptured hernia.[15]  Wilson believes the tear was caused by vomiting and diarrhea after an alleged relapse of her April symptoms, but none of Wilson's treating doctors identified the cause.[16]

---

[10] *Id.*

[11] In June 2017, the FDA classified the recall as Class II, which means that a situation existed where the probability of serious adverse health consequences from the use of these products is either considered remote or their use could cause medically reversible adverse health consequences.

[12] Complaint, p. 3, ¶ 8.  A copy of the Complaint is attached as Exhibit 4.

[13] *Id.*

[14] Wilson Deposition, p. 38.

[15] *Id.*, pp. 51-52.

[16] *Id.*

## IV.  WILSON'S COMPLAINT AND CLAIMS

Although the Complaint does not state a particular claim or distinguish between Defendants, it appears that Wilson has asserted strict product liability and breach of warranty claims against all Defendants.[17]  Regardless of the legal theory Wilson is pursuing, she must prove that her consumption of the Product caused her illness and related damages.  *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 507 (6th Cir. 1998) ("Under Kentucky law, a plaintiff has the burden of establishing causation in claims of strict liability, as well as in claims of negligence and breach of implied warranty."); *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 773 (E.D. Ky. 2017) ("Regardless of the theory a plaintiff pursues, he must show causation in a products liability case."); *C & S Fuel, Inc. v. Clark Equip. Co.*, 524 F. Supp. 949, 954 (E.D. Ky. 1981) ("products liability claims ... have one common denominator: the plaintiff must establish that the product was the factual and legal cause of the harm.").  For the reasons below, Wilson cannot establish that the Product was contaminated or that her injuries were caused by listeria and, therefore, Defendants are entitled to judgment as a matter of law under any of her theories.

## ARGUMENT

## I.  SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(a), a court must grant a motion for summary judgment when the movant demonstrates "there is no genuine dispute as to any material fact and [that it] is entitled to summary judgment as a matter of law."  Although Defendants bear the initial burden of demonstrating the absence of a genuine dispute of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), once they satisfy that burden, Wilson must "produce specific facts demonstrating a genuine issue of fact for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[17] Complaint, p. 4, ¶ 11-13.

247-48 (1986). A genuine dispute cannot be established by hypothetical doubt or by "the existence of a mere scintilla of evidence in support of [Wilson's] position." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 251). Rather, Wilson must submit enough evidence such that the finder of fact "could reasonably find" in her favor. *Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Anderson*, 477 U.S. at 252). Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir. 1989) (internal citations omitted).

## II. <u>WILSON CANNOT PREVAIL ON HER CLAIM WITHOUT ADMISSIBLE EXPERT TESTIMONY.</u>

Concurrently with this Motion, Defendants have filed a motion to exclude the testimony of Wilson's proposed expert, Dr. Timothy C. Cumbo. As explained in more detail in that motion, Dr. Cumbo's opinions are based on layers of speculation and are not reliable. For example, Dr. Cumbo acknowledges that Wilson's age and medical history make her "more susceptible in general to a lot of different infections" and that there could have been numerous potential causes of Wilson's illness, such as bacterial infections, viruses, a blood clot, or an autoimmune disease. Dr. Cumbo, however, failed to consider these other potential causes, resulting in his conclusion through an incomplete differential diagnosis that listeria may have been the cause. If the Court grants Defendants' *Daubert* motion, Defendants will necessarily be entitled to summary judgment.

In Kentucky, expert testimony is required when a fact-finder will not understand complex, technical issues that are beyond common knowledge or experience of an average person. *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 683 (E.D. Ky. 2013) (granting summary judgment because, without expert testimony on issues "far beyond the ken of ordinary persons," the plaintiff could

not establish causation); *Thomas v. Manchester Tank & Equip. Corp.*, 2005 WL 3673118, at \*1 (W.D. Ky. May 13, 2005) (quoting William S. Haynes, Kentucky Jurisprudence: Torts § 21-18 (1987)) ("'As a general rule, expert witnesses are generally necessary, indeed essential, in products liability cases . . . to prove . . . proximate causation, unless of course the nature of the defect and resultant injuries are so obvious as to fall within the general knowledge of the ordinary person.'"); *Kentucky Nat'l Ins. Co. v. W.M. Barr & Co., Inc.*, 2007 WL 9747287, at \*4 (E.D. Ky. Jan. 26, 2007) (holding that, because the issue of "causation would not be within the common knowledge or understanding of a jury," plaintiff could not overcome summary judgment without an expert.).

Kentucky law makes clear that expert testimony is required when it will assist the fact-finder in resolving complex issues. In applying similar principles, other jurisdictions uniformly require expert opinion testimony in product liability cases involving a food-borne illness. *See Rolen v. Hansen Beverage Co.*, 193 F. App'x 468, 474 (6th Cir. 2006) (under Tennessee law, plaintiff could not establish that a juice product caused consumer's injuries after the proposed expert was excluded); *Tran v. Kemper Ins. Companies*, 55 F. App'x 343, 344–45 (6th Cir. 2003) ("Plaintiffs failed to establish that they had consumed any defective products, and utterly failed to present any expert evidence that contaminated food had caused them injury, as required under Tennessee law."); *Gross v. King David Bistro, Inc.*, 83 F. Supp. 2d 597, 602 (D. Md. 2000) (granting summary judgment on grounds that without expert testimony, plaintiff could not prove a causal link between the allegedly contaminated product and fibromyalgia); *McCann v. Amy Joy Donut Shops, A Div. of Am. Snacks, Inc.*, 325 Pa. Super. 340, 344 (1984) (plaintiff could not establish causation without an expert witness who could state with a reasonable degree of medical certainty that the product consumed by plaintiff caused his gastritis); *Duncan v. Campbell Soup Co.*, 396 So. 2d 433, 434 (La. Ct. App. 1981) (upholding dismissal because the plaintiff's expert

6

could not link the plaintiff's gastroenteritis, which "may be caused by a number of things," with the consumption of the food product).

Both Kentucky law and case law from other jurisdictions make clear that Wilson will be unable to establish a causal link between her injury and Listeriosis without expert proof. Indeed, the issue of causation in this case will involve sifting through topics that are unquestionably beyond the common knowledge of an average lay person, such as: (1) interpretation of Wilson's medical records and testing; (2) the different forms of listeria; (3) the different incubation periods and symptoms of each form; (4) whether particular forms are self-limiting; (5) whether listeria can survive in hot environments; (6) and whether the facts, including Wilson's symptoms and timeline, are consistent with the foregoing. Further complicating the issue, Dr. Cumbo has conceded that there could have been numerous potential causes of Wilson's illness. In order to eliminate these alternative causes, however, a fact-finder will have to answer many complex questions involving medical science and infectious diseases — questions far exceeding the understanding of an ordinary person. Accordingly, in the event Dr. Cumbo is excluded, Defendants will be entitled to summary judgment.

**III.  WILSON CANNOT DISPUTE THAT ANY ALLEGED LISTERIA WOULD HAVE BEEN KILLED BY PROPERLY COOKING THE PRODUCT, WHICH WILSON ADMITS SHE DID.**

Even if the Court were to permit Dr. Cumbo to offer his speculative opinions, Defendants would nonetheless be entitled to summary judgment for an additional reason: it is undisputed that any alleged listeria would have been killed before Wilson consumed the Product. Unlike other products that were part of Pinnacle's recall, the Product was not ready-to-eat (intended for direct human consumption without the need for cooking or other processing to eliminate or reduce to an acceptable level the micro-organisms of concern). Instead, the Product was required to be cooked as directed on its packaging instructions, which would have resulted in an end-temperature of 165°

7

F before it was consumed.[18]  This is a critical point, as Wilson has confirmed that she properly cooked the Product according to the packaging instructions.[19]  This admission is fatal to Wilson's claims.

According to Defendants' expert, Dr. Lee Harrison, L. *mono* is killed at a temperature of 165º F and, therefore, hot-cooked foods are not a transmission source of listeria.[20]  In other words, even if the Product was contaminated in the first place (and there is no evidence it was), Wilson's testimony establishes that any listeria would have been killed when she cooked the Product, and it could not have been the cause of her illness.  This fact is not in dispute.  Indeed, Dr. Cumbo did not even address this issue in his expert report,[21] nor did he conduct any research or an independent study of the impact cooking to 165º F has on L. *mono*.[22]  In fact, until his deposition, Dr. Cumbo was unaware that the Product was required to be cooked before it was consumed.[23]  Dr. Harrison's opinion, therefore, is uncontroverted.

Even if Dr. Cumbo had addressed the issue in his report, he would have been unable to dispute that any alleged listeria in the Product would have been killed when Wilson cooked it.  During his deposition, Dr. Cumbo conceded that 165º F "should kill most things."[24]  Perhaps realizing the potential impact to Wilson's case, Dr. Cumbo attempted to backtrack from his testimony by stating that listeria could have survived if the Product was "teeming" with contamination.[25]  Dr. Cumbo, however, admitted that this testimony was merely speculation:

---

[18] A copy of the Product's heating validation is attached as Exhibit 5.

[19] Wilson Deposition, p. 13.

[20] A copy of Dr. Harrison's report is attached as Exhibit 6.

[21] A copy of Dr. Cumbo's report ("Dr. Cumbo Report") is attached as Exhibit 7.

[22] Dr. Cumbo Deposition, p. 78.

[23] *Id*., p. 79.

[24] *Id*., p. 83.

[25] *Id*., pp. 80-81.

> A. . . . And I just -- if there was a heavy inoculum of listeria in the sample that she ate, this may not be enough. **I'm just speculating right now, to be perfectly fair.**
>
> It still makes the most sense to me that this was a listeria infection because where this came from -- **this is kind of assuming** -- let me back up for a minute. If it's teeming with listeria, this may not be enough. **I don't know. I don't know.**[26]

As the Court is aware, Dr. Cumbo's assumptions and speculation are insufficient to create an issue of fact for any purposes, let alone defeating summary judgment. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."); *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("An expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate material for consideration on a motion for summary judgment.").

The preparation of the Product, as described by Wilson, would have killed any listeria and made it biologically impossible for her to have acquired any L. *mono* that may have been in the Product. Wilson has failed to produce any evidence (beyond impermissible expert supposition) demonstrating a genuine issue of this material fact for trial. Defendants are, therefore, entitled to judgment as a matter of law.

## IV.   THE RECORD DOES NOT SUPPORT WILSON'S CLAIMS.

In the absence of an admissible expert opinion supporting her claims or a genuine dispute regarding whether the alleged listeria would have been killed through cooking, Wilson cannot establish her claims under any circumstances. The mere fact that Wilson became ill several weeks after eating the Product is not enough to prove her case, as explained in the factually similar case

---

[26] *Id*. (emphasis added).

of *Picciano v. Costco Wholesale Corp.*, 2019 WL 930279, at \*1 (N.J. Super. Ct. App. Div. Feb. 25, 2019).

In *Picciano*, the plaintiff purchased a box of peaches at Costco, consumed them, and began experiencing diarrhea, headaches, constant cramping, muscle pains, dehydration, and light-headedness. *Id*. at \*1. Approximately a week later, the plaintiff received a call from Costco advising him of a nationwide recall on peaches distributed by Wawona Packaging Company due to potential listeria contamination. *Id*. The notice provided the lot and block identification numbers subject to the recall, but the plaintiff had discarded the packaging before he was notified. *Id*. After seeking medical treatment, the plaintiff's doctor listed Listeriosis as one of the three potential diagnoses, despite the fact that two stool cultures tested negative. *Id*. The plaintiff subsequently visited another doctor who opined that the plaintiff was suffering from gastroenteritis secondary to listeria, but as noted by two additional treating physicians, the listeria was only presumed, not documented. *Id*.

In granting summary judgment in favor of the defendants, the trial court first examined the lack of medical evidence presented by the plaintiff's expert, most notably that: (1) the expert could only state that the symptoms were compatible with Listeriosis, not that the plaintiff suffered from listeria poisoning caused by the peaches; and (2) the only time the expert mentioned exposure to listeria was based upon interviews with the plaintiff. *Id*. at \*2. Turning to the absence of other evidence, the court explained:

> [O]bviously, in your lawsuits you have to establish that the peaches were contaminated and ... I'm gathering from what was submitted to the [c]ourt that the only evidence [Picciano] [has] is ... a phone call from Costco or this recall notice. And if I look at the recall notice from the source of the peaches they're not even saying they're certain. It's just a potential for [contamination] — which isn't ... enough to get past summary judgment.

10

\*\*\*

> I just don't see the evidence that I think is necessary for [Picciano] to pursue the claim in court. It's unfortunate that the peaches are gone, but there's no law or case cited that allows that fact to excuse or lessen his burden under the circumstances.

\*\*\*

> You have to prove that the plaintiff ate the contaminated peaches. That he suffered the condition that arose from the contamination. And he suffered damages. And ... there's no direct evidence of contamination. There are suggestions that he ... might have been exposed, but there's no actual scientific proof that the peaches were contaminated.

*Id*. at \*3.

In upholding the trial court's award of summary judgment, the Superior Court of New Jersey emphasized several facts that parallel this case, including that: (1) the record lacked any evidence that the peaches consumed were actually contaminated; (2) in the absence of direct evidence of contamination, the plaintiff primarily relied on self-serving testimony and a nationwide recall notice; and (3) the recall notice only stated the products sold to certain distributors were "potentially" contaminated. *Id*. at \*4. With respect to Costco, the retailer, the court further held that seller liability could not exist because the record demonstrated Costco did not alter or re-brand the product, did not manipulate the packaging in any way, and was not even aware of the potential contamination at the time of purchase. *Id*. at \*5.

The facts of *Picciano* are remarkably similar, if not on all fours, with the facts of this case, and this Court should reach the same conclusion. Like the plaintiff in *Picciano*, Wilson has not presented any proof that the Product was contaminated. Instead, throughout this case Wilson has relied upon evidence "suggest[ing] that [she] might have been exposed," such as the voluntary recall and the fact that she became sick ***two months after consuming the Product***. *Id*. at \*3. Further mirroring *Picciano*, Wilson's expert report (if considered and not stricken by the Court)

11

only states that Wilson experienced symptoms similar to Listeriosis - it does not establish that she suffered from Listeriosis caused by the Product.[27]  In fact, Dr. Cumbo's report is even more flawed than the report in *Picciano* given that Dr. Cumbo was, for some reason, under the impression that the Product was "known to be contaminated."[28]  Dr. Cumbo later acknowledged at his deposition that this underlying premise was false.[29]  Finally, as explained in greater detail below, just as Coscto, there is no evidence that Kroger altered the Product or even knew of the potential, alleged contamination.  Indeed, the Product was recalled four months after Wilson purchased it.

Wilson cannot point to any evidence or genuine issue of material fact that would enable her to overcome summary judgment.  Rather, Wilson is left only with the same conclusory suggestions and flawed expert reasoning rejected by the *Picciano* court.  Because Wilson has failed to submit enough evidence such that the finder of fact could reasonably find in her favor, the Court should enter summary judgment in favor of all Defendants.

## IV.   KROGER IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS.

It is undisputed that Kroger did not manufacture the Product, but instead simply sold it to Wilson.  Under Kentucky law, retailers such as Kroger are held to a very narrow and strict standard of product liability:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution

---

[27] Dr. Cumbo Report, p. 13.
[28] Dr. Cumbo Deposition, p. 18.
[29] *Id*., pp. 18-19; 33-34.

12

> or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

KRS § 411.340. The "middleman" provisions of this statute were designed to protect distributors, wholesalers, or retailers such as Kroger who have no independent responsibility for the design or manufacture of a product. *West v. KKI, LLC*, 300 S.W.3d 184, 192 (Ky. Ct. App. 2008) (citing *Franke v. Ford Motor Co.*, 398 F.Supp.2d 833, 841 (W.D. Ky. 2005)). Thus, Kroger can only be held liable if Wilson can establish that it: (1) breached an express warranty, or (2) knew or should have known at the time of distribution that the Product was in a defective condition, unreasonably dangerous to the user. *Id.* at 192. Wilson can do neither.

Wilson has not even alleged, let alone presented evidence, that Kroger breached an express warranty or should have known at the time of distribution that the Product was defective (which it was not). The Court, therefore, should grant summary judgment in favor of Kroger.

### A.    WILSON'S CLAIMS AGAINST KROGER ARE LEGALLY DEFICIENT.

Although the basis is unclear from the Complaint, it appears that Wilson has sued Kroger simply because it sold the Product. Indeed, Wilson's counsel clarified at her deposition: "[it] sold an [allegedly] adulterated food product that caused a strict liability" and that "everyone in the chain of custody" had been sued whether they "may or may not have had something to do with" the alleged incident.[30] Further, when asked to identify each and every act by Kroger alleged to have contributed to her injuries, Wilson simply stated: "Failure to comply with duty to sell a safe food product."[31] Kroger, of course, has no such duty, and liability does not exist simply because Kroger allegedly sold the Product to Wilson. *See* KRS § 411.340 (a retailer "shall not be liable to the

---

[30] Wilson Deposition, p. 72.
[31] *Id.*, pp. 69-70.

13

plaintiff for damages arising solely from the distribution or sale of such product.").  For this reason alone, Kroger is entitled to judgment as a matter of law.

## B.  THERE IS NO FACTUAL BASIS FOR WILSON'S CLAIMS.

Kroger is entitled to summary judgment based solely on the fact that Wilson's claims are legally insufficient as pleaded.  Regardless, even had Wilson alleged that Kroger breached an express warranty or should have known the Product could have potentially been contaminated, there would be no evidence to support such an allegation.  For this additional reason, Wilson's claims against Kroger should be dismissed.

As an initial matter, Wilson has not identified a single express warranty or representation made by Kroger.  Likewise, Wilson has no evidence that Kroger had knowledge or should have known of the Product's alleged contamination.  Indeed, Kroger could not have possibly known of any alleged defect with the Product because the recall was not issued until May 2017 – four months after the purchase and three months after Wilson allegedly consumed it.[32]  Wilson's failure to present any evidence is unsurprising, as she has acknowledged that her claims against Kroger are based on various "assumptions."[33]  Assumptions, of course, are insufficient to overcome summary judgment. *Alexander,* 576 F.3d at 560 ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.").

There is simply no basis for Kroger to be held liable, and Wilson cannot identify a disputed material fact to demonstrate otherwise.  In essence, the only "evidence" Wilson has that Kroger contributed to Wilson's injuries is her own conclusory allegations.  Because Wilson's unsupported statements do not establish the existence of a disputed material fact, Kroger is entitled to summary judgment.

---

[32] *See* recall notice; Complaint, p. 3, ¶¶ 8-10; Wilson Deposition, p. 13.
[33] Wilson Deposition, pp. 71-74.

14

**V.     THE PINNACLE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON WILSON'S BREACH OF WARRANTY CLAIM.**

Setting aside the fact that she has not alleged a specific warranty made by any of the Defendants (as discussed above), Wilson faces an additional hurdle with respect to her breach of warranty claim against the Pinnacle Defendants.  Specifically, in Kentucky product liability cases, plaintiffs are required to establish privity where claims are predicated on breach of warranty, as opposed to ordinary negligence or strict liability. *Snawder v. Cohen*, 749 F. Supp. 1473, 1481 (W.D. Ky. 1990) (citing *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky. 1985)); *see also Taylor v. Southwire Tools & Equip*., 130 F.Supp.3d 1017, 1021 (E.D. Ky. 2015) ("Kentucky requires privity of contract or a direct buyer-seller relationship for breach of warranty claims.").  Because Wilson has not alleged and cannot demonstrate that she was in privity with the Pinnacle Defendants, her breach of warranty claim fails as a matter of law.  *Red Hed Oil*, 292 F. Supp. 3d at 779.

In *Red Hed Oil*, the manufacturing defendants sold e-cigarettes to a distributor, who in turn sold the cigarettes to one of the plaintiff's convenience stores.  *Id*. at 769-70.  Based on allegations that the e-cigarettes were defective and caused a fire at the convenience store, the plaintiff brought claims against both the manufacturer and distributor for negligence, defective manufacture and design, and breach of warranty.  *Id*. at 770.  After holding that the plaintiff had failed to sufficiently plead facts establishing that the product had caused the fire, the court determined that the breach of warranty claims failed for an additional reason: the plaintiff was admittedly not in privity with the manufacturing defendants.  *Id*. at 778-79.  The same outcome is required with respect to Wilson's breach of warranty claim against the Pinnacle Defendants.

Wilson has not alleged, and there are no facts to suggest, that Wilson was in privity with any of the Pinnacle Defendants.  In fact, Wilson has alleged that she bought the product from

15

Kroger, not Pinnacle (the manufacturer).  Because Wilson has failed to set forth any evidence of privity (let alone even plead that privity exists), her breach of warranty claim should be dismissed.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should enter an Order granting summary judgment in favor of the Defendants.

Respectfully submitted,

*/s/ Logan J. Mayfield*
Brian M. Johnson
Logan J. Mayfield
DICKINSON WRIGHT PLLC
300 West Vine Street, Suite 1700
Lexington, Kentucky  40507
Phone:  (859) 899-8730
Fax:  (844) 670-6009
bjohnson@dickinsonwright.com
lmayfield@dickinsonwright.com
COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ Logan J. Mayfield*
COUNSEL FOR DEFENDANTS

4840-8569-3874 v9 [63445-2]