**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**3:19-cv-229-DJH**

BARBARA WILSON                                                            PLAINTIFF

v.

PINNACLE FOODS, INC., *et al*                                       DEFENDANTS

### PLAINTIFF BARBARA WILSON'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE DR. TIMOTHY C. CUMBO (DN 36)

Plaintiff, Barbara Wilson, by counsel, submits for her Response to the Defendants' Motion to Exclude Dr. Timothy C. Cumbo the following:

Defendants' motion is moot and should be stricken from the record because Plaintiff has never put forth any expert named Dr. Timothy C. Cumbo. Accordingly, Defendants have not made a timely filing. They have missed the deadline and should not be permitted to re-file any motion to exclude any expert put forth by the Plaintiff.

If this Court is inclined to let the Defendants' blatant and sloppy error "slide" then the Plaintiff urges the Court to consider other errors they may have made. Afterall, if they cannot even get the name of the Plaintiff's expert right in the title of their motion, what other sloppiness exists therein? It is no different than Lebron James clanging a wide open dunk off the back of the rim, embarrassing himself in front of thousands of fans. Sure. He'll get it right the next time no doubt. But he still got lazy…and missed…and the missed dunk still does *not* count for any points and nor should a motion to exclude a named expert who simply does *not* exist. Lebron can beg for a do over all he wants, but that miss is never coming back.

The Defendants cannot claim harmless error…because it is ***definitely*** a harm to the

Plaintiff if this Court excludes the testimony her expert on a motion wherein the Defendants did not even properly name her expert. "Well, you know what we meant" is NOT a proper legal argument. If out of approximately 400 million Americans the Defendants want one of them specifically excluded as an expert witness in a case, then that single American must be properly identified. Else, the Court will not have excluded or permitted the proper witness. The American justice system cannot be reliably premised on "Well, you know what we meant." That would be an absurd proposition. Accordingly, the Plaintiff requests that this Court DENY any further attempt by the Defendants to correctly identify the person they sought to exclude. The deadline set by this Court and agreed to by the Plaintiff has passed. The Defendants cannot claim "mistake." They knew the correct identify of the person they wished to exclude but did not do so timely. Instead before the deadline passed they asked this Court to exclude someone else entirely. *See Moore v. Tennessee*, 267 F. App'x 450, 455 (6th Cir. 2008) and *Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485 (2010).

Plaintiff should not have to do so but offers the following response to what the Defendants will claim was their intended motion after they beg for forgiveness and wipe the egg from their face in an inevitable reply. The Defendants reach long and hard to find reasons to exclude Plaintiff's expert, Dr. Thomas A. Cumbo. Plaintiff will respond in short order by page to their arguments. In the end Defendants' motion has no merit and is a pile of absurdities strung together to try to make something out of nothing.

**Page 1**

Four to six hours is plenty of time for an expert clinician such as Dr. Cumbo to review

Plaintiff's modest amount of records (much of which is repetitive) and opine. Dr. Cumbo has reviewed tens of thousands of medical records and has spent considerably less time reviewing even critically ill patient charts. Defendants make no claim as to the "appropriate" number of hours they believe Dr. Cumbo should have spent reviewing, by the way. They simply make an unsubstantiated statement that it was "an extremely short amount of time…." Perhaps to the medically uneducated and untrained lawyer it seems so. Nonetheless, practically speaking, if Dr. Cumbo—a practicing infectious disease specialist—was supposed to spend more than 4-6 hours on records review he would at best be able to see one or possibly two patients per day. That is an absurd proposition by the Defendants as their opening argument in support of exclusion of a highly trained expert.

**Page 2**

Dr. Cumbo does not have "vague and undefined 'experience'" as asserted by the Defendants. Because a medically uneducated and untrained lawyer wishes something to be so does not make it so. In fact, his research and experience is as follows:

a) Four years of internal medicine training
b) Two years of infectious disease fellowship
c) Two board certification examinations passed in infectious disease
d) Independent study
e) Treatment of listeria patients
f) Ruling out listeria in hundreds of patients at high risk for the infection using differential diagnosis
g) 20 years of clinical practice

**Page 3**

Defendants thereon list all the pre-existing conditions of the Plaintiff which Dr. Cumbo opined made Plaintiff even *more* predisposed to a listeria infection. They also state there were no other illnesses associated with the recall at issue herein. Dr. Cumbo testified and will so again testify that we will never know who was actually sickened by the Defendants' contaminated food product because the severity of listeria depends upon both the host and the inoculum. If enough time (weeks) passed between consumption and onset of illness then many, many people who actually had listeria—and were younger and healthier than the then-87-year-old Plaintiff—most probably would have believed they had some other illness and never would have associated the symptoms with food ingested perhaps weeks earlier.

**Pages 4-5**

There are far too many instances of a lawyer trying to play doctor. Defendants claim there are "scientific inaccuracies" without a single example. Again, just because a medically uneducated and untrained lawyer wishes something to be so does not make it so.

Opinion 1: In his deposition Dr. Cumbo testified as follows on pages 85 and 86 of his deposition:

```
21        EXAMINATION BY MR. SEXTON:
22   Q.   Dr. Cumbo, for the record, I'm Jeff Sexton,
23        one of the attorneys representing Barbara
24        Wilson. We've met before.
25        Can you say, with a reasonable degree of
 1        medical probability, that Barbara Wilson was
 2        infected with listeria?
 3   A.   Yes.
```

| | |
|---|---|
| 4 | Q. Is it more likely than not that she contracted |
| 5 | this listeria from a food product manufactured |
| 6 | in a facility that was teaming [sic] with listeria? |
| 7 | A. It seemed to be a heavy infection, so, yes. |
| 8 | I'm sorry. A heavy contamination, so, yes. |

Opinion 2: Defendants' assertion of "Unreliability" is simply wrong. The timeframe of incubation of listeria varies in a human being by inoculum and host factors. That is the scientific evidence and Dr. Cumbo has never wavered in his opinion that the Plaintiff presented with listeria symptoms within a medically and scientifically valid timeframe to support his finding.

Opinion 3: Plaintiff's exposure to listeria *is* supported by the record. Defendants' statement to the contrary is a complete falsehood. No less than four (4) times the word "listeria" appears in Plaintiff's medical records. See Exhibit 1 attached hereto. Words do not just randomly appear in medical records. The word "listeria" deliberately and precisely appears in Plaintiff's medical records for medically valid reasons despite the wishful thinking of a medically untrained and uneducated lawyer.

Dr. Cumbo has pointed out previously and will do so again on the witness stand that a differential diagnosis can be made one of two ways: by *inclusion* or *exclusion*. The Defendants' are trying to convince this Court that Dr. Cumbo was supposed to prove a negative. That is an impossible standard and *Daubert* and *Kumho* do not require as much. Dr. Cumbo used deductive reasoning in the presence of the positive and negative evidence in the record as he has many, many times before in his career. He arrived at the conclusion that it was more likely than not or a reasonable degree of medical probability that Barbara Wilson was infected by listeria from food product manufactured by the Defendants in a facility teeming with listeria.

Opinion 4: This assertion of "Unreliability" makes no logical sense. Barbara Wilson got better when given the recommended antibiotic for listeria. This is the crux of a differential diagnosis and belies the Defendants' ignorance of the same. Dr. Cumbo is highly experience and he used the clinical information available to him and Wilson's response to therapy. He has a wealth of experience with antibiotics. His diagnosis is supported by scientific evidence in addition to clinical experience, teaching, experience and learning.

**Page 6**

We have already address supra Dr. Cumbo's so-called "undefined 'experience'" which the Defendants continue to wish away. It is a waste of this Court's time and attention for the Defendants to continue to claim Dr. Cumbo has no "experience" or "undefined experience" given his twenty years of practice as an infectious disease specialist. His CV is attached again for the Court's reference as Exhibit 2. Among other positions, Dr. Cumbo has for the past ten years served as Chief of Staff of the Division of Infectious Disease at Mount Saint Mary's Hospital in Buffalo, New York, as well as its Director of Infection Control for the past eleven years. The man is the front-line defense for every infectious disease passing through a major hospital of Buffalo, New York. The Defendants only wish Dr. Cumbo's experience was less well-defined. For Defendantss counsel to file a pleading with this Court stating Cumbo is "unqualified" and his opinions are "unreliable" is tantamount to a violation of Federal Rules of Civil Procedure 11.

Defendants also whine that Dr. Cumbo "…does not cite literature, studies, testing or a single piece of authority for his conclusions." That is an absurd statement. It is no different than if a federal or state judge made the statement "it is well-established that ambiguities in a contract will be construed against the drafter." If the Defendants chastised said judge for not citing a case

in support of such a statement, where would said judge begin? After all it is a concept taught on day one of any law school class on contracts. Thousands upon thousands of cases at the national and state level have time and time again reiterated the principle of contract law.

Cumbo's opinions are based on years of experience and basic notions of infectious disease medicine. A PubMed search (the National Institute of Health library) for the term *listeria monocytogenes* returns 19,838 entries. A search for *listeria gastroenteritis* returns 277 entries in the past 10 years. Those are mostly case reports and generic studies only four (4) of which are English language reviews. In other words, there is nothing new or noteworthy or revolutionary in the study of listeria the past 10 years. Dr. Cumbo's experience in the infectious disease of listeria the past 20 years is more extensive than even the library of the National Institute of Health  If the drafter of the Defendants' motion was another infectious disease doctor instead of a medically untrained and uneducated lawyer then such absurd arguments would not have been made.

**Pages 7-12**

These pages contain more uninformed assertions by lawyers playing doctor and copying and pasting words from other cases without truly thinking about their applicability to this case.

Dr. Cumbo's differential diagnosis is not incomplete. He made a differential diagnosis as a clinician. His was a chart review. He can only work with the information available. Dr. Cumbo does not have a time machine. He cannot go back to 2017 and order tests, etc., to expand the body of evidence supporting his differential diagnosis. The Defendants want it both ways. They are essentially complaining that Dr. Cumbo was not the Plaintiff's treating physician and that he does not have a larger body of evidence which to review.

Dr. Cumbo rules out listeria on a regular basis. He has a great deal of experience with

infectious diseases. Listeria, while not rare, is not as common as other infectious diseases. That does not mean Dr. Cumbo is not qualified to know it when he sees it or diagnose it based on ruling other potential infectious diseases out. That is absurd. It is not different than saying this Court is not qualified to preside over a death penalty case/capital murder trial because this Court doesn't do so on a regular basis. Using the Defendants' basis for comparing qualifications, doctor versus judge, there were 887 cases of listeria in the United States in 2017 according to the CDC and according to the U.S. Bureau of Justice Statistics only 23 prisoners were executed in 2017 and there were 34 capital murder trials in 2017 resulting in confinement of the defendant to death row. Despite Defendants' absurd logic, Plaintiff's counsel certainly considers this Court to be qualified to preside over a capital murder case despite the relative "rarity" of such cases; yet, listeria is far more common and Dr. Cumbo has far more daily experience with such cases—and ruling them out by differential diagnosis—than this Court does with capital murder cases. So why then should Dr. Cumbo be considered "unqualified" and excluded from rendering an opinion before this Court? Just because medically unqualified and untrained defense counsel says so?

      Defendants use such wishful, loaded terms phrases as "speculative jumps" and "scientific inaccuracies" with no hard examples. They essentially argue that Dr. Cumbo cannot be an expert until he is an expert. Such absurdities will not fly. The "fake it unto you make it" tone of their arguments is tiresome.

      Dr. Cumbo is qualified to diagnose and treat listeriosis (listeria) so how can he not be qualified to render an opinion as to the same? There is no need for a time machine so Dr. Cumbo can return to 2017 and perform listeria studies and expanded testing of the Plaintiff. Dr. Cumbo is qualified by definition: he is a Board Certified Infectious Disease Specialist. He does

not just rely on his experience in rendering his opinion about Barbara Wilson. He is relying upon the medical record and what is and is not present therein. He explained in his deposition testimony how he deductively reasoned, by virtue of his 20 years of experience doing so repeatedly, his way to a diagnosis of listeria in Barbara Wilson.

Dr. Cumbo has treated, by his count, over 20,000 infectious disease cases during his career. Listeria is part of this career caseload. His clinical experience is not limited. He must regularly include listeria as a pathogen in all cases of meningitis, gastroenteritis, pregnant women with infectious diseases, for example.

As discussed supra Dr. Cumbo did consider alternative causes of Barbara Wilson's symptoms, but her known potential exposure to food contaminated with listeria and the evidence in the medical records such as her symptoms, her response to different antibiotics, medical history, her age, the presence of the word "listeria" placed in the medical records by other medical professionals his knowledge and experience led him to conclude that with a reasonable degree of medical probability, Barbara Wilson was infected with listeria. It is always *possible* in this world that something else was responsible for her illness…because anything is *possible*. However, Dr. Cumbo's expertise in infectious disease led him to conclude with a reasonable degree of medical probability her illness was caused by listeria. To argue or assert otherwise as grounds to exclude Cumbo's testimony and expert opinion is nothing but word games and wishful thinking on the part of the Defendants.

### **Pages 13-16**

Dr. Cumbo's differential diagnosis was not speculative. Rather it was based on good deductive reasoning based on the facts and evidence in Barbara Wilson's medical records. Again, it is not a leap to make a differential diagnosis of "listeria" when the very word appears

9

four times in Wilson's medical records. Cumbo was not the first medical professional to consider and use the diagnosis. Notice how conveniently the Defenants ignore in their motion—not a single mention!!—the fact that the word "listeria" appears four times in the medical records. Dr. Cumbo did not make it up or pull it out of thin air.

Speaking of spinning something out of thin air, the Defendants use a preposterous analogy to the *Tamraz* case involving Parkinson's Disease to support their argument that Dr. Cumbo's differential diagnosis is speculative. They went all in on that analogy…and the dice come up 7. Craps. Loser. Dr. Cumbo's opinion is backed by scientific data. Dr. Cumbo uses negative results, *e.g.* Wilson did *not* have salmonella, she did *not* have shigella, she did *not* have E.coli, she did *not* have many other infectious diseases, instead of positive results, e.g., she *did* test positive for listeria (which was not possible because no one ever thought to run that test because they were too busy saving her life in an emergency hernia repair surgery at 3 a.m. to worry about why she was vomiting so violently or having such ferocious diarrhea).

The Parkinson's comparison is a loser. In that case there were no negative results to help guide the hypothesis that the person had Parkinson's. A diagnosis of Parkinson's is not supported by lab results or imaging or a biopsy. A clinical response to therapy is the only way to diagnose Parkinson's. If the patient responds to the drug Sinemet or other such approved medications then and only then does a qualified practitioner make the differential diagnosis of Parkinson's—just as Barbara Wilson responded to the most widely accepted antibiotic for listeria: Augmentin (and a brief dose of Bactrim). The drug clinches the Parkinson's diagnosis just as the drug (or Wilson's response thereto) clinched his differential diagnosis of listeria in Wilson. Using the logic of the Defendants' argument, no deserving patient would *ever* make it to the point of receiving a prescription drug for Parkinson's absent a positive diagnosis. Thank

God the Defendants are not running the world healthcare system because they would only prescribe drugs to dead bodies after confirmatory autopsies.

**Pages 16 to the merciful end**

The Defendants throw a Hail Mary at the end. If Dr. Cumbo will not be disqualified, they argue, then portions of his testimony should be excluded because of an 87-year-old woman's microwave oven. The Defendants seize upon a simple question (what in retrospect appeared to be a trick question) posed to an 87-year-old widow who lives alone and is still independent (when not retching over her toilet because of the Defendants' contaminated food).

The Defendants asked Ms. Wilson—over two years after the incident—if she cooked the contaminated food product according to the packaging instructions. However, they did not ask her what those instructions were in detail. They did not ask her if she even read the instructions. They simply speculate—as they accuse Dr. Cumbo of doing—that Ms. Wilson knew what the cooking instructions on the package were when she answered "Yes."

```
9         Q. WHEN YOU DID COOK THE PRODUCT, AND I
10   BELIEVE THE COMPLAINT ALLEGES THIS, DID YOU FOLLOW THE
11   COOKING INSTRUCTIONS ON THE PRODUCT?
12         A.  YES.
```

It is highly probable that Ms. Wilson *thought* she knew what the instructions were when she answered the question and when she put the package in her microwave and pressed…what button? The Defendants did not even ask Ms. Wilson what button(s) she pushed on her microwave. They did not even ask if she used a microwave or a conventional oven. The Defendants have no idea how Ms. Wilson cooked the food. They certainly did not ask her what the cooking instructions were.

The Defendants argue that listeria is killed at a temperature of 165 degrees Fahrenheit. It

is the Defendants' burden to prove Ms. Wilson's method of cooking actually reached 165ºF. It is the Defendants' burden to prove Ms. Wilson cooked the contaminated food long enough to kill listeria. Despite never testifying to as much, Ms. Wilson may very well *believe* she cooked the food at 165ºF and that she cooked the food long enough at that temperature to kill listeria, but that does not prove she actually did either.

Did the Defendants examine Ms. Wilson's cooking device? No. Did the Defendants consult the literature on the ability of the elderly to read and follow cooking instructions in tiny print on food packages? No. Did the Defendants conduct a differential diagnosis of Ms. Wilson's ability to follow written cooking instructions? No.

Yet, no matter, says Dr. Cumbo. Because as an expert he testified (as the Defendants' so conveniently repeat on page 18) that if there was a heavy inoculum, *i.e.*, amount, of listeria present in the contaminated food, then 165ºF may not be enough to kill the listeria. That is a scientific experiment which can only be reproduced in a laboratory under controlled conditions; however, it is not conjecture or speculation to make such a statement if based on common knowledge of infectious diseases and resistance of those pathogens.

The United States Food and Drug Administration issued a report condemning the Defendants' manufacturing facility in Jackson, Tennessee, where the food at issue was made. In fact, the Defendant Pinnacle closed the building permanently. There were holes in the roof covered by tarps. There was standing water contaminated with nasty things. There were numerous swabs made of locations in the building which showed it to be highly contaminated with listeria. It is well within the reasoning of Dr. Cumbo to conclude that the contaminated food ingested by Barbara Wilson was equally teeming with listeria. And the Defendants do not like that outcome and wish it and Dr. Thomas A. Cumbo would go away.

Dated: __4/22/20_____

/s/ Jeffrey A. Sexton
Jeffrey A. Sexton, Attorney
John W. Byrnes, Attorney
325 W. Main St., Ste. 150
Louisville, KY 40207
(502) 893-3784
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send electronic notice to all counsel of record.

/s/ Jeffrey A. Sexton
Counsel for Plaintiff